# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| **RUBY CABLE,** | ) | |
| | ) | **Case No. 3:22-cv-00307** |
| **v.** | ) | |
| | ) | |
| **KILO KIJAKAZI, Acting** | ) | |
| **Commissioner of Social Security** | ) | |

**To:    The Honorable Waverly D. Crenshaw, Jr., Chief United States District Judge**

## REPORT AND RECOMMENDATION

Plaintiff Ruby Cable filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying her disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 26), to which Defendant SSA has responded (Docket No. 30). Plaintiff has also filed a reply to the SSA's response (Docket No. 31). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. (Docket No. 5.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 26) be DENIED.

# I.    INTRODUCTION

On July 18, 2019, Plaintiff proactively filed an application for DIB. (Transcript of the Administrative Record (Docket No. 23) at 15).[1] In these applications, Plaintiff asserted that, as of the alleged onset date of February 28, 2018, she was disabled and unable to work due to her back surgeries, diabetes, and arthritis in her hip and shoulders, and problems with her legs and feet. (AR 179, 193.) The claims were denied initially on December 9, 2019 and upon reconsideration on May 1, 2020. (AR 15.) On December 7, 2020, Plaintiff appeared with counsel and testified at a telephone hearing conducted by ALJ William F. Taylor. (AR 29–62.) On December 22, 2020, the ALJ denied the claim. (AR 15–25.) On March 1, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the SSA. (AR 1–3.) Plaintiff then timely commenced this civil action, over which the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

# II.    THE ALJ'S FINDINGS

In his December 22, 2020 unfavorable decision, the ALJ included the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since February 28, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: osteoarthritis multiple joints, diabetes, hypertension, lumbar spine disorder with fusion at the L4- L5 vertebrae and radiculopathy and bursitis of the right shoulder (20 CFR 404.1520(c)).

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

2

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift, carry, push and pull 20 pounds occasionally and can lift carry push and pull 10 pounds frequently, sit hours six, stand/walk four hours, occasionally stoop, crouch, kneel, no crawling and frequently balance, no limits on hearing seeing or speaking, frequently climb stairs and ramps, no climbing of ladder ropes or scaffolds, can frequently reach bilaterally in all directions including overhead, can finger, feel and handle, avoid concentrated exposure to vibrations, no limits on the use of hands for operation of controls and frequent use of the feet for the operation of controls, can occasionally tolerate concentrated exposure to extreme heat and cold, can work at heights and near bodies of water when protected from falls, and avoid working with or near dangerous and moving type of equipment or machinery, to include dangerous moving type of parts, must be allowed to wear a back brace.

6. The claimant is capable of performing past relevant work as a Secretary. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2018, through the date of this decision (20 CFR 404.1520(f)).

(AR 15–25.)

## III.   REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV.   DISCUSSIONS AND CONCLUSIONS OF LAW

### A.   Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v.*

3

*Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* Second, if the claimant does not have a severe medically determinable impairment that meets the 12-month durational requirements, she is not disabled. *Id.* Third, if the claimant suffers from a listed impairment, or its equivalent, for the proper duration, she is presumed disabled. *Id.* Fourth, if the claimant can perform relevant past work based on her residual functional capacity ("RFC"), which is an assessment of "the most you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1), she is not disabled. *Id.* Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

4

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B.    The ALJ's Five-Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved Plaintiff's claim at step three of the five-step process. The ALJ found that Plaintiff met the first two steps: (1) she had not engaged in substantial gainful activity since her alleged onset date, and (2) her impairments of "osteoarthritis multiple joints, diabetes, hypertension, lumbar spine disorder with fusion at the L4- L5 vertebrae and radiculopathy and bursitis of the right shoulder" were severe.[2] (AR 17–19.) However, the ALJ determined at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 19.) At step four, the ALJ determined that Plaintiff had the RFC to perform light work with certain postural, manipulative, and environmental limitations. (AR 19–24.) At step five, the ALJ determined that Plaintiff could perform past relevant work as a secretary. (AR 24–25.) Therefore, the ALJ concluded that Plaintiff was not under a disability at any time from February 28, 2018 through December 22, 2020, the date of the decision. (AR 25.)

_____

[2] The ALJ found that Plaintiff's restless leg syndrome and episodic paroxysmal anxiety did not cause more than minimal limitation to Plaintiff's ability to perform basic work activities and, accordingly, were non-severe impairments. (AR 18–19.)

5

**C.    Plaintiff's Assertions of Error**

Plaintiff sets forth three assertions of error:

1. The ALJ erred in failing to properly account for or include limitations in his RFC assessment to account for Ms. Cable's right upper extremity impairment and limitations.

2. The ALJ erred in finding Dr. Li's statement "persuasive" and in relying upon this "opinion" to support his denial of Ms. Cable's claim.

3. The ALJ erred in failing to consider or account for Ms. Cable's pain and how this limits her ability to follow instructions or sustain focus and concentration sufficiently to perform her prior skilled work.

(Docket No. 27 at 1–2, 10–24.) Accordingly, Plaintiff requests that this case be remanded for further consideration under sentence four of 42 U.S.C. § 405(g), which allows a district court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

If the case contains an adequate record, "the [SSA's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court now turns to Plaintiff's assertions of error.

6

1. **The ALJ's Consideration of Plaintiff's Right Upper Extremity Impairment.**

For her first assertion of error, Plaintiff argues that the ALJ failed to include limitations in her RFC that adequately accounted for her right upper extremity impairment. Plaintiff asserts that she had a well-documented right shoulder impairment and that the ALJ found that her right shoulder impairments were severe. However, she argues that the ALJ did not adequately limit her use of her right arm and shoulder for reaching and did not adequately limit her ability to lift, carry, push, pull, handle, or otherwise use her right upper extremity.

In essence, Plaintiff challenges the ALJ's assessment of her RFC, which is "the most a claimant can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). Courts review an ALJ's RFC determination for substantial evidence. *See Blakley*, 581 F.3d at 405–06. "In formulating a residual functional capacity, the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). An ALJ "need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).

The Court begins with a review of the evidence pertaining to Plaintiff's right shoulder condition. The first evidence in the record appears on October 15, 2019 when she presented to the emergency department with complaints of right shoulder pain. (AR 324.) She "rolled over in bed and felt a pop in her right shoulder." (*Id.*) Notes from this visit state that the pain continued in her right shoulder for a week and worsened with lateral and posterior abduction of the right arm. (*Id.*)

7

Imaging taken of Plaintiff's right shoulder was negative for "demonstration of acute fractures or dislocations." (AR 326.) The attending physicians suspected muscular strain as the cause of the shoulder pain; advised Plaintiff on supportive care measures; prescribed Plaintiff pain medication; and referred Plaintiff to an orthopedic doctor and her primary care physician, Dr. James Anderson, for further evaluation. (AR 327–28.)

A few weeks later, on November 6, 2019, Plaintiff saw Dr. Woodrow Wilson for a consultative examination. (AR 331–34.) Dr. Wilson noted that Plaintiff recently had imaging taken of her shoulder in the emergency room and that she had previously had steroid injections in her shoulder, "which did help her some." (AR 331.) Dr. Wilson stated that Plaintiff's "shoulders have forward extension to 140 degrees bilaterally, abduction to 140 degrees on the right and 150 degrees on the left, full internal rotation, external rotation 20 degrees on the right and 15 degrees on the left." (AR 333.) The examination notes that Plaintiff "thinks she can lift 20 to 25 lbs occasionally" but she frequently wears a back brace. (*Id.*)

Later that month, on November 26, 2019, Plaintiff saw her primary care physician, Dr. James Anderson, with complaints of right shoulder discomfort. (AR 346–50.) During this visit, Plaintiff was assessed as having bursitis of the right shoulder and was referred to an orthopedic surgeon for evaluation and treatment of her pain. (AR 349.) A few months later, on February 5, 2020, Plaintiff returned to see Dr. Anderson with continued complaints of right shoulder discomfort, but there are no notes regarding any treatment for her right shoulder. (AR 339–45.) During another visit a few weeks later, on February 20, 2020, Dr. Anderson described her as having a history of "right shoulder," though she was no longer assessed with bursitis of the right shoulder and there are no treatment notes related to her right shoulder. (AR 335–38.) Plaintiff then had a telehealth visit with Dr. Anderson on April 7, 2020. (AR 368–69.) "Right shoulder" was listed as

8

a reason for the visit but there is no other information related to her shoulder. She saw Dr. Anderson in person on May 27, 2020 and "right shoulder pain" was listed in her history, but there were no further details about her shoulder pain, progress, or treatment. (AR 362–67.) Finally, in a September 22, 2020 visit with an advanced practice registered nurse at Dr. Anderson's practice, Plaintiff complained of increased pain and a decreased range of motion in her right shoulder, but the nurse stated that Plaintiff was not able to have an MRI taken because of insurance issues, though Plaintiff planned to follow up with an orthopedic specialist in the beginning of 2021. (AR 358–61.) There are no other references to Plaintiff's right shoulder in the record during Plaintiff's insured period.

In the ALJ's decision, he found that Plaintiff's "bursitis of the right shoulder" and "osteoarthritis multiple joints" were severe impairments. (AR 17.) He then found that Plaintiff had the RFC to perform "light work"[3] and that she could, among other things, lift, carry, push, and pull 20 pounds occasionally; lift, carry, push, and pull 10 pounds frequently; and frequently reach bilaterally in all directions, including overhead. (AR 19.) In making this determination, he stated that he considered Plaintiff's work background, hearing testimony, medical treatment records, medical opinions, and prior administrative medical findings. (AR 20–24.)

_____

[3] "Light work," which involves a specified set of restrictions:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 1567(b).

With respect to her right shoulder, the ALJ discussed Plaintiff's October 15, 2019 visit to the emergency room for shoulder pain; her November 6, 2019 consultative examination with Dr. Wilson during which he examined her shoulder range of motion; and her September 22, 2020 visit with an advanced practice registered nurse at Dr. Anderson's practice where Plaintiff complained of right shoulder pain. (AR 22–23.) He mentioned that Dr. Anderson "had been treating her for her rotator cuff tear for about a year and that she has had an x-ray of her right shoulder," but he did not detail any of Dr. Anderson's medical records after Plaintiff's October 2019 emergency room visit. (AR 21.) During the hearing, the ALJ and Plaintiff's counsel discussed that Plaintiff had imaging taken of her shoulder, but the imaging was not in the record. (AR 55.)

The ALJ considered the findings of two non-examining physicians – Dr. Moses Izuegbu and Dr. Charles Lee – both of whom considered Plaintiff's medical conditions and formulated an RFC, though they differed on the recommended limitations. At the initial level, Dr. Izuegbu reviewed records from Dr. Anderson's practice, but there is no indication that he considered Plaintiff's records from her emergency room visit on October 15, 2019 when she first complained of right shoulder pain. (AR 68–71.) This omission likely occurred because Dr. Izuegbu completed his assessment on November 27, 2019, which was only a few weeks after Plaintiff's emergency room trip. Dr. Izuegbu found that Plaintiff could lift, carry, push, and pull 20 pounds occasionally and lift, carry, push, and pull 10 pounds frequently, but he made no explicit findings of any physical limitations stemming from Plaintiff's shoulder and found that Plaintiff had no manipulative limitations. (*Id.*)

At the reconsideration level, Dr. Lee reevaluated Plaintiff's claim on May 1, 2020 based on her new physical condition of right shoulder pain and worsening conditions related to her back and legs. (AR 74–87.) Dr. Lee reviewed Plaintiff's emergency room records from October 2019

and her records from her visits with Dr. Anderson. Just like Dr. Izuegbu, Dr. Lee found that Plaintiff could lift, carry, push, and pull 20 pounds occasionally and lift, carry, push, and pull 10 pounds frequently. However, Dr. Lee found that Plaintiff had a manipulative limitation in her ability to reach overhead on her right side. (AR 83.) He stated that her right shoulder overhead reach was limited to "frequently." (AR 84.)

The ALJ also relied on testimony from a vocational expert during the administrative hearing to assist in determining whether Plaintiff could perform work in the national economy despite her impairments, as was appropriate. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments."). The ALJ asked the vocational expert whether a hypothetical individual with the physical limitations that ultimately comprised the RFC could perform "light" work of secretary, "which is described in the DOT as a sedentary exertional level position, skilled and an SVP of 6." (AR 57–59.) The vocational expert confirmed that a hypothetical individual could perform that work. (AR 59.)

Based on the ALJ's consideration of the foregoing, the Court finds that the ALJ's failure to include specific limitations in the formulated RFC for Plaintiff's right shoulder or right upper extremity does not constitute reversible error. Importantly, the RFC finding is in line with that of reviewing state agency physician Dr. Lee. The ALJ found Dr. Lee's opinion to be more persuasive than that of Dr. Izuegbu because Dr. Lee considered new evidence and found additional limitations. Specifically, Dr. Lee rated Plaintiff's reaching as follows:

```
Rate the individual's manipulative limitations:

Reaching any direction (including overhead):
   Limited

              Right Overhead
```

(AR 83.) The Court construes the above rating to mean that Plaintiff's overhead reaching of the right shoulder should be "limited." (AR 83.) However, Dr. Lee did not specify if the limitation should be frequent, occasional, or otherwise. (*Id.*)

In line with Dr. Lee's opinion, the ALJ limited Plaintiff's reaching in many ways. He limited her reaching on both sides ("bilaterally"); he limited her reaching "in all directions," including overhead; and he limited her reaching to "frequently."[4] (AR 19.) Plaintiff argues that this limitation does not do enough because it "fail[s] to include additional limitations on [her] use of her right arm and shoulder for reaching, either overhead or in other directions." (Docket No. 27 at 13.) The Commissioner, on the other hand, asserts that this limitation is overly generous to Plaintiff because it accounts for her left shoulder as well as her right shoulder. (Docket No. 30 at 9.)

The Court finds that the limitation on reaching in the RFC is supported by substantial evidence. An ALJ's decision is appropriately considered "determinative if there is such relevant evidence as a reasonable mind might accept as sufficient to support the ALJ's conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (quoting *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)) (internal quotations omitted). Given the ALJ's extensive discussion regarding the status of Plaintiff's right shoulder condition, this is clearly not a case involving an ALJ's failure to

---

[4] The occupation of "secretary" is listed as "sedentary work" and requires frequent reaching, where "frequent" is defined as one-third to two-thirds of the day. Secretary (DOT 201.362-030), 1991 WL 671672 (2016).

12

evaluate an impairment when considering a claimant's overall functional capacity, which would represent reversible error. *See Flory v. Comm'r of Soc. Sec.*, 477 F. Supp. 3d 672, 679 (S.D. Ohio 2020) (noting that an ALJ does not commit error if she addresses all of a claimant's impairments in formulating the RFC) (internal citations omitted).

Here, the ALJ explicitly took into consideration Dr. Lee's findings – rather than Dr. Izuegbu's findings – and modeled the RFC after the limitations that Dr. Lee included. These included a limitation on reaching that extended to both Plaintiff's left and right sides. Furthermore, the Court finds that the limitations on lifting, carrying, pushing, pulling, handling, or otherwise using the right upper extremity in the RFC are also supported by substantial evidence. These limitations directly mirror Dr. Lee's findings. *See Vorholt v. Comm'r of Soc. Sec.*, 409 F. App'x 883, 887 (6th Cir. 2011) (holding an ALJ was justified in relying on the opinion of the state agency doctor).

In addition, the ALJ considered the majority, if not all, the medical evidence in the record related to Plaintiff's right shoulder. This evidence cited by the ALJ supports the conclusion that, while Plaintiff experiences issues related to her right shoulder, her "ability to function is not impaired to an extent beyond that accounted for by [her] RFC." *Tippen v. Comm'r of Soc. Sec.*, No. 1:13-cv-1377, 2015 WL 1310778, at *7 (W.D. Mich. Mar. 24, 2015). *See also Allison v. Comm'r of Soc. Sec.*, 347 F.Supp.2d 439, 446 (E.D. Mich. 2004) ("[T]he ALJ reasonably concluded that although, Plaintiff's degenerative joint disease in her right shoulder and torn rotator cuff were serious, her restrictions were only as previously stated. Further, there is no other evidence that this Court is able to locate or that Plaintiff points to support the additional restrictions argued above.").

13

Plaintiff has not pointed to any evidence in the record that the ALJ overlooked or omitted that would indicate that the ALJ erred in his RFC determination.[5] Rather, all the evidence to which Plaintiff points is evidence that the ALJ considered in his decision. Plaintiff believes that this evidence should merit a different and more restrictive RFC than the one that the ALJ decided. In other words, there is no dispute about what evidence the ALJ considered, but how he considered it. Yet when substantial evidence supports an ALJ's denial of benefits, as it does here, that finding must be affirmed, even if substantial evidence also exists in the record that could support a finding of disability. *Buxton v. Halter*, 246 F.3d 762, 772–73 (6th Cir. 2001). In other words, the ALJ has a "zone of choice" within which he can act, without fear of court interference. *Id.* at 773. Based on the ALJ's consideration of Plaintiff's medical records, her testimony, and the opinions of the reviewing state agency physicians, the Courts finds that substantial evidence supports the limitation formulated by the ALJ with respect to Plaintiff's right upper extremity because the RFC adequately accounted for all limitations that the ALJ found credible.[6]

---

[5] Plaintiff states that she was not able to get an MRI of her right shoulder because of insurance and financial issues. (Docket No. 27 at 14.) During the hearing, Plaintiff's counsel asked her to detail these insurance and financial issues, which she did. (AR 46.) She also discussed her insurance issues in response to a question from the ALJ. (AR 54.) However, Plaintiff does not detail to the Court why or how these insurance issues impact the question of whether the ALJ's RFC determination is supported by substantial evidence. Accordingly, the Court will not consider whether the ALJ properly considered Plaintiff's insurance issues.

[6] Plaintiff argues that the ALJ committed an error with respect to the RFC that was not harmless because, had the ALJ limited Plaintiff to "no more than occasional reaching, handling, or fingering with her right upper extremity," she would not be able to perform work as a secretary because that occupation requires "frequent" performance of those functions. (Docket No. 27 at 14.) Because the Court finds that the ALJ's formulation of the RFC was supported by substantial evidence and not in error, it will not determine whether a hypothetical error was or was not harmless.

14

## 2.    The ALJ's Consideration of Dr. Li's Opinion.

For her second assertion of error, Plaintiff argues that the ALJ improperly considered the opinion of one of her treating physicians, Dr. Khan Li, who performed surgery on Plaintiff's back in March 2017. Specifically, Plaintiff argues that the ALJ's reliance upon Dr. Li's opinion that Plaintiff could return to work is a statement on an issue reserved to the Commissioner under the regulations at 20 C.F.R. § 404.1520b, and, therefore, the opinion cannot be relied upon. Plaintiff also argues that the ALJ failed to properly consider the "persuasiveness" of Dr. Li's opinion under the regulations at 20 C.F.R. § 404.1520c.

With respect to Plaintiff's first argument, the applicable regulations required the ALJ to "articulate . . . how persuasive [he found] all of the *medical opinions*." 20 C.F.R. § 404.1520c(b) (emphasis added). A "medical opinion" is "a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions" in her ability to perform certain physical, mental, or other activities, or to adapt to certain environmental conditions. 20 C.F.R. § 404.1513(a)(2).

The regulations also specify that the ALJ "will not provide any analysis" of certain other evidence that is deemed "inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c), 416.920b(c). Among the evidence considered "neither valuable nor persuasive" are all statements regarding "issues reserved for the Commissioner," which include any statement that a claimant is or is not "disabled, blind, able to work, or able to perform regular or continuing work." 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i). Only the ALJ is responsible for making the ultimate determination of whether someone is "disabled, blind, able to work, or able to perform regular or continuing work." 20 C.F.R. § 404.1520b(c)(3). *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)) ("The

15

determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.").

Therefore, the question is whether the statement at issue was a "medical opinion" that the ALJ was required to discuss or a statement on an issue reserved for the Commissioner. The evidence that Plaintiff contends should not have been analyzed comes from Dr. Li's notes from his visit with Plaintiff on May 24, 2017, approximately three months after Dr. Li performed a lumbar fusion procedure on Plaintiff:

> Overall, she is doing very well following her recent surgery. Her incision is well-healed. She has good range of motion and strength in both legs along with her lower back. I am going to give her a release to return to work in 2 weeks. I will see her back in one month with a final set of x-rays. I've given her final prescription for some hydrocodone. We will discontinue the back brace at her next visit. . . .

(AR 270–71 (emphasis added).) The ALJ described Dr. Li's statement as a medical opinion "that the claimant could return to work in two weeks" and found that it was persuasive because Dr. Li was Plaintiff's surgeon and was familiar with her conditions. (AR 24.)

A review of the underlined language above reveals that Dr. Li did not offer any opinions as to what Plaintiff could do despite her limitations. *See* 20 C.F.R. § 404.1513(a)(2). He also did not identify "impairment-related limitations or restrictions" regarding Plaintiff's ability to perform any activities or adapt to any environmental conditions. *Id.* Rather, Dr. Li stated that he would give Plaintiff a release to return to work at a later point in time. Although Dr. Li did not explicitly state that Plaintiff was "able to work," his statement implied that Plaintiff had an ability to work in the near future. Accordingly, the statement was not a medical opinion as defined in SSA regulations, but was, instead, a statement on an issue "reserved for the Commissioner," i.e., whether Plaintiff was "able to work, or able to perform regular or continuing work." 20 C.F. § 404.1520b(c)(3). Because the regulations explicitly provide that the ALJ "will not provide any analysis" regarding

16

such statements, as they are "inherently neither valuable nor persuasive," the ALJ's decision to analyze Dr. Li's statement was in error. *See* 20 C.F.R. §§ 404.1520b(c).[7]

Although the Court finds that the ALJ erred in considering Dr. Li's statement that Plaintiff "could return to work in two weeks," courts are to review agency decision for "harmless error." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009). "[I]f an agency has failed to adhere to its own procedures," remand is inappropriate unless "the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Id.* (quoting *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)). Courts are not required to "convert judicial review of agency action into a ping-pong game" where "remand would be an idle and useless formality." *Id.* (quoting *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969)). It is Plaintiff who has the burden of proof to show that the error was harmful. *Rosshirt v. Comm'r of Soc. Sec.*, No. 2:19-CV-3280, 2020 WL 1465786, at *6 (S.D. Ohio Mar. 26, 2020), *report and recommendation adopted*, No. 2:19-CV-3280, 2020 WL 4592393 (S.D. Ohio Aug. 11, 2020) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

The Court finds that Plaintiff has not met her burden to demonstrate that the ALJ's consideration of Dr. Li's statement was more than harmless error. As set forth above, the ALJ considered Plaintiff's medical records, including all of her visits with Dr. Li and with her other

---

[7] The Commissioner concedes that Dr. Li's statement was not a medical opinion. (Docket No. 30 at 11.) However, the Commissioner argues that another of Dr. Li's statements – that Plaintiff had no specific restrictions – is a medical opinion on which the ALJ could rely. (*Id.* (citing 20 C.F.R. § 404.1513(a)(2)).) The statement to which the Commissioner points is from Dr. Li's progress note from June 28, 2017 in which he states, "I don't have any specific restrictions for her at this point in time." (AR 268.) Plaintiff has not challenged the ALJ's characterization or consideration of this statement. Accordingly, while this brief statement may be a medical opinion pursuant to 20 C.F.R. § 404.1513(a)(2), the Court does not find it appropriate or necessary to issue any findings related to this statement.

17

providers. He also considered her testimony during the hearing and the opinions of the reviewing state agency physicians. Plaintiff has not offered any argument to show that the ALJ's consideration of the statement made by her treating physician in 2017 that she could return to work "prejudiced [her] on the merits." *Rabbers*, 582 F.3d at 654. Furthermore, the record shows that Plaintiff did return to work after Dr. Li made this statement. (AR 47–48.) Accordingly, the ALJ's consideration of Dr. Li's statement is no more harmful than his consideration of Plaintiff's work history. For all of the reasons described above, the Court rejects Plaintiff's second assertion of error.[8]

### 3. The ALJ's Consideration of Plaintiff's Subjective Complaints, Including Pain.

For her third assertion of error, Plaintiff argues that the ALJ failed to consider or account for the extent to which her pain impacted her ability to focus or concentrate. (Docket No. 27 at 19–24.) She makes a similar argument with respect to her anxiety and panic disorder. (*Id.* at 22–23.) In other words, Plaintiff alleges that the ALJ improperly considered her statements about her limitations – namely her pain – and how they impact her functioning.

Both the SSA and the Sixth Circuit have enunciated guidelines for use in analyzing a plaintiff's subjective complaints of pain. One such guideline is the two-pronged test for evaluating

---

[8] Plaintiff also argues that the ALJ failed to properly consider the "persuasiveness" of Dr. Li's opinion under the regulations at 20 C.F.R. § 404.1520c. (Docket No. 27 at 16–19.) She asserts that the ALJ failed to consider that Dr. Li's statement was made nine months prior to her alleged onset date; to consider the intervening evidence; and to recognize that the statement only addressed her back issues and did not take her diabetes, hypertension, osteoarthritis, etc. into account. (*Id.*) Her argument focuses on Dr. Li's statement from his May 2017 note that Plaintiff "could return to work in two weeks." (*Id.*)

The Court finds this argument to contradict Plaintiff's initial argument that Dr. Li's statement is not a medical opinion but rather a statement limited to an issue "reserved for the Commissioner." Because the Court agrees with Plaintiff that the statement is *not* a medical opinion, the Court will not conduct an evaluation under 20 C.F.R. § 404.1520c, which is applicable only to "medical opinions" and "prior administrative findings."

18

a claimant's assertion of disabling pain as delineated by the Sixth Circuit in *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986). To meet the first prong of this test, the subject claimant must produce objective evidence of an underlying condition. *Id.* at 853. To meet the second prong, there are two options: either (1) there must be "objective medical evidence to confirm the severity of the alleged pain arising from that condition," or (2) "the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." *Id.* This standard represents "a more succinct form" of the requirements contained in 20 C.F.R. § 404.1529, which circumscribes the Commissioner's duties when evaluating whether a claimant suffers from disabling symptoms. *Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994).

In 20 C.F.R. § 404.1529, the SSA provides a checklist of factors to assess symptoms, including pain. The ALJ cannot ignore a plaintiff's statements detailing the symptoms, persistence, or intensity of her pain simply because current objective medical evidence does not fully corroborate the plaintiff's statements. 20 C.F.R. § 404.1529(c)(2). Besides reviewing medical records to address the credibility of a plaintiff's symptoms of pain, an ALJ must review the entire case record in light of seven factors: (1) daily activities; (2) the location, duration, frequency, and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) the claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms; and (7) "other evidence." *Id.* § 404.1529(c)(3). Social Security Ruling ("SSR") 16-3p clarifies and expands on the factors set forth in 20 C.F.R. § 404.1529 and directs the ALJ to consider a claimant's "statements about the intensity, persistence, and limiting effects of the

symptoms" and "evaluate whether the statements are consistent with objective medical evidence and other evidence.". 2017 WL 5180304, at *6 (Oct. 25, 2017).

The consistency of an individual's statements about the intensity, persistence, and limiting effects of symptoms is also important. If an individual's statements are *consistent* with the objective medical evidence, it is *more* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* at *8. On the other hand, if those statements are *inconsistent*, it is *less* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* Consistency is determined by reviewing an individual's statements when seeking disability benefits, statements at other times, and attempts to seek and follow medical treatment. *Id.* at *8–9. An analysis of treatment history may include a consideration of an individual's ability to afford treatment, access to low-cost medical services, and/or relief from over-the-counter medications, among other information. *Id.* at *9.

The ALJ's determination must contain specific reasons for the weight given to the individual's symptoms that are clearly articulated so that the individual and the subsequent reviewer can assess how the ALJ evaluated the individual's symptoms. *Id.* at *10. However, the Sixth Circuit has held that an ALJ's credibility determination is "essentially unchallengeable" and must be affirmed so long as the findings are "reasonable and supported by substantial evidence." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016) (citations omitted) (internal quotation marks omitted). *See also Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (courts must accord "great weight and deference" to an ALJ's determination regarding the consistency of a claimant's allegations); *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005) (claimants seeking to overturn the ALJ's decision still "face an uphill battle").

The Court finds that substantial evidence supports the ALJ's credibility determination in this matter. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ's assessment of a claimant's credibility must be supported by substantial evidence.") (citation omitted). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her allegations concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 21.) Specifically, he found that Plaintiff's medical treatment records suggested that her symptoms were milder and that she had a great sustained capacity than she alleged. (AR 23.)

In his report, the ALJ discussed Plaintiff's testimony during the December 7, 2020 hearing, including her statements related to the intensity and persistence of her pain; her ability to concentrate; her ability to sleep; her medication usage; her health insurance and ability to obtain medical treatment; and her daily activities. (AR 20–21.) He then analyzed Plaintiff's statements in comparison to the medical evidence in the record to determine (1) the extent to which Plaintiff's symptoms limited her ability to perform work-related activities and (2) the consistency of Plaintiff's statement about the intensity, persistence, and limiting effects of her symptoms.

In making his determination, the ALJ extensively discussed medical records from Dr. Khan Li at Nashville Neurosurgery Associates (AR 267–95); Dr. James Anderson and others at Tri Star Family Clinic (AR 296–323, 335–69); Summit Medical Center (AR 324–29, 370–400); and consultative physician Dr. Woodrow Wilson (AR 330–34). (AR 21–23.) The ALJ detailed visits between May 24, 2017 and June 25, 2020 wherein Plaintiff reported symptoms and ranges of motion that spanned from mild or normal (i.e., "minor aches and pains"; "normal ranges of motion"; "appropriate mood and affect"; "range of motion was intact") to more severe (i.e., "pain

was constant": "reduced range of motion and deformity"; "reduced range of motion in her shoulders and low back"). (*Id.*) The ALJ also considered testimony from Plaintiff regarding her pain, including that she uses a heating pad or ice pack; will lay down with her feet up to alleviate pain; sleeps from one to four hours per night; and is unable to concentrate because of her pain. (AR 20.) In other words, the ALJ did not cherry pick only those records that would support his position.

However, the record evidence, as noted by the ALJ, is not entirely consistent with Plaintiff's allegations of disabling conditions. For example, the ALJ referenced Plaintiff's testimony regarding her ability to perform a hypothetical job as a greeter where she would have to be on her feet for most of the day but could occasionally sit and would get three daily breaks. (AR 21.) The ALJ contrasted Plaintiff's statement that she could not perform this hypothetical job with her prior work experience wherein she "worked 15 hours per week and was on her feet for three hours each day." (*Id.* ("This conflicts with her testimony that she would only be able to stand for about an hour and that her limitations had existed for two years.").)

With respect to Plaintiff's ability to focus and concentrate, the ALJ did not fail to evaluate Plaintiff's allegations or to consider how her pain may have impacted these abilities as Plaintiff argues. Instead, the ALJ considered Plaintiff's statements about her ability to concentrate – she "contended that [s]he has limitations in concentrating generally and that her medications and fatigue limit her ability to concentrate and complete activities" (AR 18); "stated she is unable to concentrate due to being so tired and because of the pain" (AR 20); and "stated that about three times a week she would have difficulty with concentration" (AR 21). The ALJ, however, contrasted these subjective complaints with record evidence regarding Plaintiff's daily activities, which included driving, preparing meals, watching TV, playing games, managing funds, and

handling her own medical care. (AR 18.) Plaintiff describes these as "nominal" and "basic" activities that were not inconsistent with Plaintiff's subjective complaints of her pain. (Docket No. 27 at 23.) But courts in the Sixth Circuit "have long held that '[a]s a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 417 (quoting *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (per curiam) (citing *Masters v. Comm'r of Soc. Sec.*, 707 F. App'x 374, 379 (6th Cir. 2017) ("The ALJ reasonably noted that despite her symptoms, Masters remains able to perform routine, daily tasks that he viewed as inconsistent with her allegations that her pain and symptoms were completely debilitating.")). Accordingly, the Court finds no error in the ALJ's consideration of Plaintiff's daily activities.

Finally, although Plaintiff references records documenting her past complaints of pain, her medication usage, her treatment, and her insurance issues, she does not challenge any of the evidence cited by the ALJ, which is fatal to her argument. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014) ("Merely marshalling evidence to suggest that he is disabled, however, is insufficient; to prevail on appeal, Peterson must demonstrate that the ALJ's determination that he was not disabled is not supported by substantial evidence."). Furthermore, she does not point to any specific evidence that the ALJ failed to consider. Rather, she argues that the ALJ did not properly consider the evidence in the record regarding her pain. However, when substantial evidence supports an ALJ's decision regarding credibility, as it does here, that finding must be affirmed, even if substantial evidence also exists in the record that could support a finding of disability. *Buxton v. Halter*, 246 F.3d 762, 772–73 (6th Cir. 2001).

In sum, the ALJ relied on specific evidence to support his conclusion that Plaintiff's subjective complaints, including about her pain, were not entirely consistent with the record,

including Plaintiff's hearing testimony, prior work history, medical records, and daily activities. Given such support, as well as the significant deference that must be afforded the ALJ's credibility determination, *see Hernandez*, 644 F. App'x at 476, the Court finds no reversible error in the ALJ's finding. Accordingly, the Court rejects Plaintiff's third assertion of error.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (Docket No. 26) be DENIED and the Commissioner's decision be AFFIRMED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

24